IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| BP LUBRICANTS USA INC., formerly known as CASTROL NORTH AMERICA, INC. , <br><br> Plaintiff, <br><br> v. <br><br> GLOBAL SATURN, INC., doing business as SATURN OF CONYERS, <br><br> Defendant. | No.  1:06-cv-0149-WSD |

**OPINION AND ORDER**

This matter is before the Court on Defendant Global Saturn, Inc.'s ("Defendant" or "Global Saturn") Motion for Summary Judgment ("Def. MSJ") [67].

**I.     FACTUAL BACKGROUND**

This case involves a business dispute between Defendant and Plaintiff BP Lubricants USA, Inc. ("BP" or "Plaintiff").  Since 1994, Plaintiff has supplied lubricants to Defendant for use in its various dealerships in the Atlanta area. Plaintiff alleges that on February 23, 2000, it entered into a Supply Agreement

1

with Global Saturn in which Global Saturn agreed to purchase certain lubricants and cleaning liquids for use at its Saturn of Conyers automobile dealership ("the Supply Agreement").  The Supply Agreement covered a ten-year period, effective February 23, 2000 through February 23, 2010.  It required Global Saturn to purchase from BP at least 85% of its monthly requirement of motor oil, other lubricants, and cleaning agents–a minimum of 25,000 gallons of lubricants and 495 gallons of cleaning liquids per year.  BP alleges that in March 2005, Global Saturn received a better deal from a competitor and ceased performing its obligations under the Supply Agreement.  Relying on the Supply Agreement, Plaintiff contends it has the right to seek damages in the form of lost profits for the volume of product that Global Saturn committed, but failed, to purchase.  The Supply Agreement relied upon by BP designates New Jersey law as governing the validity, interpretation, and performance of the agreement between the parties.

      Defendant Global Saturn disputes all of BP's allegations.  It claims that it never signed the Supply Agreement.  Defendant alleges that its parts and services director, Jerry Blalock, signed a supply agreement, but he deleted the provisions requiring Defendant to purchase a minimum amount of BP products over the ten-year term.  Although it does not offer a copy of the edited agreement, Defendant

contends that BP fabricated the Supply Agreement on which it relies by combining the first few pages of a form supply agreement with the signature page from the agreement that Blalock edited and signed.  Defendant also claims that a BP representative told Blalock that the agreement would apply only to Global Saturn's Chamblee location–not to Conyers or any other dealership location.  According to Defendant, the BP representative told Blalock that he was unsure whether BP would accept the changes Blalock made.  Blalock asserts he did not see the revised supply agreement again.  Global Saturn also claims that until it began purchasing products from another company in Spring 2005, BP had not referred to the Supply Agreement.

On January 23, 2006, Plaintiff filed this action, asserting five claims against Defendant.  On February 14, 2006, Plaintiff filed an Amended Complaint, asserting only a claim for breach of contract and omitting the other claims asserted in its original Complaint.  (Am. Compl. [2].)  On November 13, 2006, Defendant filed this Motion for Summary Judgment.

## II. DISCUSSION

### A. Summary Judgment Standard

Summary judgment is appropriate where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). The party seeking summary judgment bears the burden of demonstrating the absence of a genuine dispute as to any material fact. Herzog v. Castle Rock Entm't, 193 F.3d 1241, 1246 (11th Cir. 1999). Once the moving party has met this burden, the non-movant must demonstrate that summary judgment is inappropriate by designating specific facts showing a genuine issue for trial. Graham v. State Farm Mut. Ins. Co., 193 F.3d 1274, 1282 (11th Cir. 1999). The non-moving party "need not present evidence in a form necessary for admission at trial; however, he may not merely rest on his pleadings." Id.

The Court views all facts in the light most favorable to the nonmoving party, but only if there is a genuine dispute as to those facts. Scott v. Harris, 127 S.Ct. 1769, 1776 (2007). "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party," summary judgment for the moving

party is proper.  Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986).  In other words, the Court must ask "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law."  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 259 (1986).

    B.  The Supply Agreement

Defendant first argues that it is entitled to summary judgment because "undisputed evidence establishes that Global Saturn did not execute the document upon which BP's claims are based."  (Def. MSJ, at 8.)  The Court disagrees.

Defendant's evidence that Blalock did not sign the Supply Agreement is not "uncontradicted" as Defendant contends.  The parties point to evidence showing a considerable dispute regarding the existence, execution, and terms of the Supply Agreement.  Plaintiff has presented a copy of the purported original Supply Agreement, which it claims is authentic, unaltered, and binding on Global Saturn.  If valid, the Supply Agreement governs the relationship between the parties.  Defendant has presented evidence that the agreement is a forgery.  Plaintiff points out contradictions within Blalock's testimony that create genuine disputed facts.

This is a classic example of a dispute of material fact that must be resolved at trial. Summary judgment is thus inappropriate.

### C.     Plaintiff's Lost Profits Calculation

Defendant next argues that Plaintiff cannot prove its lost future profits with the required specificity.[1]  "It is fundamental that there must always be a reasonably accurate and fair basis for the computation of alleged lost profits." J.L. Davis & Assocs. v. Heidler, 622 A.2d 923, 929 (N.J. Super. 1993) (quotations and citations omitted).  "Generally, when it can be determined what, according to the contract, the plaintiff would receive for that which he has done and what profit he would

---

[1] Defendant first argues that Georgia law applies to Plaintiff's damages calculation for the breach of contract claim.  (Def. MSJ, at 10 n.12.)  Plaintiff argues that New Jersey law applies because the Supply Agreement on which it relies for its breach of contract claim contains a choice of law provision designating New Jersey law as governing the agreement.  (Opp. to Def. MSJ, at 17-18.)  In its Reply, Defendant appears to abandon its argument that Georgia law applies, noting that Georgia and New Jersey law are practically identical on this issue.  (Reply [90], at 10 n.7.)  While the Court agrees that the outcome is likely the same regardless of which state law applies, the Court finds that New Jersey law governs Plaintiff's breach of contract claim.  Georgia courts have consistently held that choice of law provisions contracted by parties are enforceable and apply to both a contract's construction and its remedy.  Carr v. Kupfer, 296 S.E.2d 560, 562 (Ga. 1982) ("Absent a contrary public policy, this court will normally enforce a contractual choice of law clause."); see also ProfiTel Group, LLC v. Polyone Corp., 2006 U.S. Dist. LEXIS 44987, at 36 n.7 (N.D. Ga. June 19, 2006) (applying choice of law provision in a contract to both the contract construction and damages determination related to the breach of contract).

have realized by doing that which, without fault, he has been prevented from doing, then these sums become the legal, as they are the just, measure of his damages." Id.  That is, "the plaintiff[] must prove the amount of damages with a reasonable degree of certainty." P.F.I., Inc. v. Kulis, 832 A.2d 931, 934-35 (N.J. Super. 2003).  "Although [New Jersey law] require[s] a reasonably accurate and fair basis for the computation of alleged lost profits, the fact that a plaintiff may not be able to fix its damages with precision will not preclude recovery of damages. . . . Loss of profits, where based on sound fact and not on mere opinion evidence without factual support, is recognized as a proper measure of damages if capable of being estimated with a reasonable degree of certainty." V.A.L. Floors, Inc. v. Westminster Communities, Inc., 810 A.2d 625, 630 (N.J. Super. 2002) (quotations and citations omitted).

To support its lost profits claim, Plaintiff relies on the testimony of its expert witness, Mr. Ferrara, a Certified Public Accountant and BP's Performance Reporting and Forecasting Manager.  Defendant does not offer an expert witness on the issue of lost profits, but argues that Plaintiff's lost profit calculations are based on improper assumptions which cannot support a claim for lost profit damages.  Defendant contends that in making his lost profits calculations,

Mr. Ferrara improperly assumed that Global Saturn would have purchased 25,000 gallons of BP products annually through February 2010.  Defendant contends that Global Saturn's Conyers location never purchased BP products at these levels during its relationship with BP.  (Def. MSJ, at 12.)  Defendant also argues that Plaintiff's expert improperly assumed that the price for BP lubricants, and their costs, would remain the same throughout the remainder of the contract term.  Defendant further complains that Plaintiff improperly failed to include a time value of money discount in its future profits calculation.  (Id. at 13.)  Defendant's arguments are unconvincing.

It was not improper for BP's expert to assume that Global Saturn would have purchased 25,000 gallons of lubricants annually per the Supply Agreement.  The plain language of the Supply Agreement, on which Plaintiff relies, obligated Defendant to make these minimum purchases.[2]  If BP can prove the validity of the Supply Agreement at trial, it may introduce evidence of lost profits based on the

---

[2] Moreover, Plaintiff offers evidence that the Supply Agreement, though originally only applicable to the Conyers location, was amended to apply to all Global Saturn locations.  Although the Conyers location itself did not purchase 25,000 gallons annually, all Global Saturn locations did in fact purchase close to this amount.

8

minimum purchase requirements of the Supply Agreement. Those sums are a fair measure of damages.

Mr. Ferrara's assumption that prices and costs for BP's lubricants would not change throughout the term of the contract does not disqualify BP's damages theory such that summary judgment must be granted. Ferrara's approach to calculating damages was actually conservative, because BP has not decreased its prices for lubricants in 12 years, and BP has a policy of maintaining a profit margin percentage on each product it sells. Thus, Ferrara's calculation, in an increasing pricing environment, results in an understatement of actual lost profits. Such an assumption does not indicate that Plaintiff has not demonstrated its lost profits to a degree of reasonable certainty.

Finally, the expert's failure to apply a time value of money discount was not unreasonable. As Plaintiff points out, such a calculation requires knowing when the lost profits would be paid. If a discount for the time value of the lost profits is necessary, the calculation may be made at a later date and is relatively routine.

Loss of profits is recognized as a proper measure of damages if Plaintiff can estimate it with a reasonable degree of certainty. Plaintiff has met its burden here to offer factual support for its damages calculations to the required reasonable

9

degree of certainty. Defendant's Motion for Summary Judgment is therefore denied.

## IV. CONCLUSION

For the foregoing reasons,

**IT IS HEREBY ORDERED** that Defendant's Motion for Summary Judgment [67] is **DENIED.**

**SO ORDERED** this 1st day of June, 2007.

_____
WILLIAM S. DUFFEY, JR.
UNITED STATES DISTRICT JUDGE